We will resume with PRICEPLAY, previously PERFORMANCE PRICING, now PRICEPLAY against GOOGLE May it please the Court, the District Court made two errors. First, it erred in plaintiff's construction of price determining activity or PDA. Second, it erred again when it found that GOOGLE AdWords does not meet the claim limitation price determining activity as it was erroneously construed by the Court. I want to start with the issue of claim construction. With the Court's permission, I prepared a simple printout that has the plaintiff's construction juxtaposed next to the Court's constructions with certain highlighting and hand it to the bailiff and we will make sure that your opposing counsel has a copy. If you could bring those up. Now, the Court's construction for price determining activity is on the right side there. It is any form of competition or entertainment activity or combination of such activities that is not otherwise part of the sales transaction. Now, the error lies with the highlighted portion there. Used to determine the price but not otherwise part of a sales transaction. Let me ask you something. What do you say is the matter with the Court's construction when the Court said that whatever this thing is, there's one limitation on it. It can't be part of the The problem with the Court's construction and in particular with that component otherwise not part of a sales transaction is it fails to reflect the concept of a collateral activity. Now, the purpose of that language is to reflect the concept of a collateral activity. Throughout the patent, it refers interchangeably to a PDA or price determining activity and a collateral activity and the parties and the Court were in agreement that the concept correct construction of PDA must reflect that concept of a collateral activity. Well, let me put you a hypothetical. Suppose they said what you're going to do is your price will be determined on the basis of a grouping of you meet with several other people who are also interested in this thing and you will compete among yourselves as to how much you're going to claim covers that? If I understand the question is correctly, you're asking if would the activity of certain competitors bidding against each other constitute a price? Would that under your interpretation of the claim, would that be permissible or would that say you can't it's not enough it's not permissible to interpret this as requiring that it not be part of the sales transaction? I'm trying to give you something where it seems to me that it's an intricate part, intimate part, and an intricate part of the sale of the price fixing mechanism, yet it would seem under your interpretation it's okay. No, it would not be okay. That would also be excluded under our interpretation. Any activity that is a price determining activity that is used to determine the price paid is excluded from our interpretation of collateral activity. Well, is the difference between your interpretation and the court's interpretation whether the use of the language to determine the price paid as distinguished from being part of a sales transaction? No, the distinction between the two the two constructions is the court's identification as the sales transaction as the activity to which the PDA must be collateral, whereas plaintiff's interpretation identifies offering or accepting price as the activity to which the PDA must be collateral. And plaintiff's interpretation necessarily follows from the meaning of the word collateral. Now collateral means not part of. It's more than that, Your Honor. Not part of, but related to. Right, it means it coinciding in tendency or effect. That's the key part, but extrinsic to another main consideration. So there's two components. Same effect, but different from. There must be two things, and this is not in dispute. The meaning of collateral has not been in dispute, and only plaintiff's construction of collateral activity think, for example, of a main argument and a collateral argument. The main argument and the collateral argument have the same effect. They're both intended to convince the reader of the same ultimate conclusion, but they're different. They must be different from one another. They're different arguments. So same effect and different from. Now plaintiff's construction, other than offering or accepting a price used to determine, excuse me, used to determine a price, but other than offering or accepting a price reflects both of these aspects of collateral. The main activity to which the PDA must be collateral on the patent is normal price determining activities. That means activities that would normally determine the price in the absence of a PDA. These are the only activities that are different from the PDA and that have the same effect as the PDA. They're normally used to determine price in a normal sales transaction are one, offering a price, two, accepting a price. For example, I have an Apple. A counter offer would constitute one as well. So that would constitute an offer. How about any terms or conditions of the transaction? Terms and conditions of the transaction would not fall within the definition of offering or price determining activity. But why would that be collateral? In other words, part of the transaction is not only setting the price, not only making an offer and an acceptance, but whatever other terms and conditions go along with it. And those things are not necessarily collateral, are they? Well, the focus here is it has to be a price determining activity. We're trying to say the collateral activity must also determine price. So those activities... The collateral activity deals with price, but with respect to the transaction itself, the transaction may include all sorts of things in addition to price. Transaction may include other things in addition to price, yes. Such as in this instance, you know, where an ad is positioned on a page. Where in a... An ad, the if I'm going to make an arrangement with somebody to advertise my product on the internet, and I'm going to say, fine, I'm willing to pay you X amount of dollars if you will advertise my product. And part of the deal is where my ad is placed on the page. That's part of the transaction, the placement of the ad, is it not? It's not a part of the transaction. It's not collateral to the transaction. That's not part of the sales transaction either under... If we're talking about Google AdWords, that's not part of the sales transaction under either plaintiff's construction or the court's construction. Suppose I were to... You give me an offer. You say, I'll sell you this at a certain amount. And I say, that's fine. That's exactly what I'm willing to pay, providing I don't have to pay you for two years. And you say to me, that's ridiculous. If you're not going to pay me for two years, I'm going to have to increase your price substantially. And we go back and forth and eventually agree that I won't pay for 90 days and at a particular price. Isn't... Would you say that's all part of the sales transaction? Those are parts of the sales transaction, yes. And they're also components of the offer and acceptance determining price. The ultimately what determines price is the offer and the acceptance. This is in the context of a traditional normal sales transaction outside the concept of one that uses a PDA. So the point is that plaintiff's construction incorporates both of these aspects. Same effect and different from. The defendant's construction does not incorporate... Excuse me. The court's construction does not incorporate either of these aspects. The court's construction identifies sales transaction as the main activity to which PDA must be collateral. This must mean two things. This must mean that the sales transaction, one, has the same effect as the collateral activity. And two, it must be... The sales transaction must be different from... The PDA must be different from the sales transaction. We bargained back and forth over how long it's going to take me to pay for it. I take it that would not be covered by the court's construction because it is part of the sales transaction. Is that right? That would not be covered by either the plaintiff's construction or the court's construction, Your Honor, because it is part of offering or accepting a price and it is part of a sales transaction. But the point being sales transaction identified as the main activity to which the PDA must be collateral does not accurately reflect the meaning of collateral, which the parties and the court agree the claim construction must do. Go ahead. Why don't you complete your thought? First, sales transaction does not have the same effect as the PDA. The effect of the PDA is determining price. The effect of a sales transaction is broader than that. It's to effectuate a sale. A component of that is to determine price, but also is to determine quantity, determine certain reps and warranties. The actual component of sales transaction that has the same effect as the PDA is only offering or accepting a price. It's only those components of the sales transaction that have price determining effects. So only plaintiff's construction meets the first aspect of the meaning of collateral. The court's construction, the court's identification of sales transaction as main activity does not. The second aspect of the meaning of collateral is it must be different from. The sales transaction must be different from the PDA in order for the court's construction to be correct. That's part of the meaning of collateral. But the sales transaction is not different from a patent. If I can refer the court to figure one in the patent, which is reproduced in the blue brief, in plaintiff's blue brief, at page 846. There you go. You will see that this is a depiction of the buyer-seller transaction, the patent. Now as a component of that buyer-seller transaction are steps 140 and 150. This is the price determining activity. So the patent is showing that the price determining activity is actually a component of the sales transaction. It cannot be a component of the sales transaction and be different from the sales transaction at the same time. But the correct construction must reflect the fact that the collateral activity is different from the sales transaction. The actual component of the sales transaction that is different from the collateral activity is only those price determining effects, those price determining components of the sales transaction. So defendants, excuse me, the court's construction fails to grasp either meaning of either component of the meaning of the word collateral, which both the parties and the court agreed that the correct construction of PDA must incorporate. Can I focus your attention for a moment on a different limitation, the limitation scale to the performance of the buyer? Sure. You, as I understand it, agreed to or at least did not object to the construction of that language as meaning that a lower price always corresponds to a better performance. That's correct. Why is it not the case that in the Google system that you can have a situation in which higher performance, i.e. a larger higher quality score, produces a higher click, click per... Cost per click. Yes, yes. Cost per click, yes. Why is that not the case? It seems to me, I mean, Google has an explanation of how that can come about and I didn't see any sufficiently persuasive response to that. Perhaps you have one. The limitation you're referring to, the scaling limitation, was construed as price being adjusted by a ratio table or algorithm wherein a lower price always corresponds to a better performance level in the PDA. So there's two components here and both of them are focused on the relationship between price and quality score. They're not focused on the relationship between price and auction. The patent teaches that the product that price is a product of two things. One, price is a product of or price depends upon a performance in the PDA, which is quality score. Two, it also teaches that price is dependent on auction results. Dependent claim 22 from independent claim 20, independent claim 18, for example, is price being partially determined by the results of an auction. So we know that price is the result of two things. One, performance at the PDA, quality score, and two, auction results. Now this particular... Auction results are the product in part of the quality score. I'm sorry, your honor, one more... Auction results are the result in part of the yes. So this component here, this claim destruction requires two things. Your price is the CPC, right? Price is the CPC. Okay, and the short version of my question is why you can have a situation in which performance, i.e. quality score, goes up and price, i.e. CPC, also goes up. You don't dispute that. In any given auction result, for any given auction result, that's not the case. If you're comparing one auction to a subsequent auction, certainly that can be the case. But this is done on a per auction basis. Quality score is calculated on a per auction basis. So for any given auction, price is always inversely proportional to quality score. Now the operable construction here, if you look at the construction, two components. One, price being adjusted by a ratio. The formula is ad rank of the component of the buyer below over quality score. That's a ratio. One over quality score is necessarily... I understand. The second component is the one you're concerned with. The second component is wherein a lower price always corresponds to a better performance or performance level. Now what this is concerned about is the relationship between price and quality score, the adjustment. Whatever that starting price is, it must be adjusted such that a higher quality score corresponds to a lower price and vice versa. There's no requirement that that starting figure, based on which is adjusted, that starting figure determined by the auction results must be fixed or immovable. Very well. We've run through your time and over a bit, but why don't we hear from your opposing counsel and we'll save you a couple of minutes. Thank you, Your Honor. Please support, Your Honors. First of all, one thing I want to address that we did not have an opportunity to brief is the issue of waiver of the claim construction. There's a lot of time spent on the issue of whether the court had properly construed the PDA, and we would submit, Your Honor, that a plaintiff waived any opportunity to object to that construction by not objecting to the magistrate's ruling. The plaintiff says, points to this Fifth Circuit authority, this Douglas case. You did brief that, didn't you? I mean, you alluded to it. We didn't have an opportunity to respond to their attempt to explain why they hadn't waived. That's the nature of being an appellee. I'm not complaining. Most appellees are happy to be appellees. I understand, I was confused. But the argument that plaintiff makes in their reply is premised on the idea that the claim construction ruling is a report and recommendation, but it's not. It's an order, a report and recommendation under the statute under 28 U.S.C. 636. B-1 applies to very specific things. It applies to motions for summary judgment, motions to dismiss, motions for a preliminary injunction. Claim construction is specifically not listed among those things, and so the Douglas case applies to a report and recommendation, and so this notion that they were required to get notice of the effects of not appealing is just completely irrelevant here. And in fact, Your Honor, in the Eastern District of Texas, they point to the local rules of the Eastern District of Texas, but in the case of Psychotech GMBH, Boston Scientific Corporation, 599F2nd741, this is a case from Judge Clark in the Eastern District of Texas in 2009, he specifically held that a claim construction order is not a report and recommendation. And in doing so, he noted that Congress has amended Section 636, which talks about what types of rulings can be delegated to a magistrate. They've amended that three times since the Markman decision. So was there any need for the district court to do anything with respect to this claim construction? Suppose, let's assume for the sake of argument, the district court agreed 100% with the claim construction order. Does the district court have to do anything or just ignores it? It doesn't have to adopt it, does it? It does not have to adopt it. It can choose to do so or it can choose to sustain the objection. No, but I mean, suppose it fully agrees with it. Does it have to say, I adopt, I agree with the magistrate's claim construction? If an objection is made, then it does, but here there was no objection. Nobody says anything about it. If nobody says anything about it, they don't need to do anything. They don't need to do anything. Unlike a report and recommendation where the district judge either has to adopt it or not adopt it. Correct. That's right. And that didn't happen here. So, Mr. Perlso, what is your response to Ms. Lyon's argument about the scale to the performance of the buyer, alternate ground? Sure, Your Honor. So, first of all, I just want to note, I don't think that the way that price play has characterized the construction is fully accurate. What the construction requires is you have a formula wherein it is always the case that a better price will come from a result from a better performance and a corresponding to that. And it makes a reference to some base price and that you're looking at that as part of, and then you're talking about a base price and an adjustment thereof. First of all, in AdWords, there is no base price. Well, I gather that what he was saying was, you know, maybe there are instances if you compare two different auctions that maybe there isn't a correlation, but within one auction there is always a correlation. Better performance means better price and vice versa. Well, but that just reads out the always. That's why you need to look at the algorithm itself. If you look at the algorithm itself, which we have, I believe, on page 57 of our opening brief, it has a variable in it. And there's a variable in it, which is someone else's quality score, one of the other bidders. And that can change. And so the way that they're looking at it, they want to hold everything constant, but that's not how AdWords works. There is no algorithm that they can point to in AdWords where the required always result that the court construed and they don't object to occurs. A couple other things in relation to the price determining activity. Judge Lynn, I believe you had posed the question, the fact that, you know, where an ad on the page is also part of the transaction. And that's absolutely right. And that's really, you know, one of the main reasons why there's no infringement under the court's construction. The court says that there needs to be this competitive or entertaining activity that is used to set the price, but is not otherwise part of the sales transaction. Well... So the activity is not simply price, it's price plus other things, including ranking. Right. Here, what they're pointing to as the PDA is not used only to set the price. Even assuming it was competitive entertaining, it has other purposes. And so it's not a collateral activity. It's not a PDA as the court construed the term. And there's no dispute. There's no factual dispute on how it's used. And, you know, not once through the brief for any of these terms have they raised any factual disputes. Additionally, on this notion of the figure one pointing to what is or is not part of the sales transaction. And in plainest briefs, and in part was a part alluded to today, they seem to be arguing that the court found that the PDA is not part of the sales transaction. But that's just wrong. The court said that it is a competitive or an entertaining activity that is used to set the price, but is not otherwise part of the sales transaction. So this notion that the court's instruction somehow is inconsistent with figure one is just a red herring. It's not. And let me, this is getting down to perhaps a much less elevated level than two of you have been discussing on this case. But let me see if I understand what's going on in with this patent at a base level. If a Ford dealer should decide to try to bolster its sales by saying, we've got a big fishbowl full of jelly beans and the person that gets closest to guessing the number of jelly beans who comes in next Sunday gets a thousand dollars off the Ford of their choice. That is the gist, I take it, of the patent. I agree. Except that the Ford dealer, and if the Ford dealer puts that contest on the internet, it infringes this patent. Is that your understanding? Yeah. I mean, there's other elements, but that's basically what it's about. It's about this. What's missing? I mean. Well, I mean, I think that there's other elements about, you have to select the product and. Well, you're selecting the Ford. I mean. Yeah. In other words, you have to make an offer on the Ford. But once you make an offer on the Ford, then your price is going to be set by who gets closest to the jelly bean number. What you are describing is the invention. All right. One other thing I wanted to address that was not addressed during Price Play's argument was the notion of performance. There's three independent grounds here that we've pointed to on which the court's ruling of non-infringement can be affirmed. One is the PDA, which we've talked about. Two is scaling. And then the third is the performance of the buyer. Each of the claims require that some action be taken in reference to the performance of the buyer. And we would submit, your honors, that there is no performance of the court. The court found that the performance of the buyer is the buyer's level of success in the price-determining activity. Now, even assuming that the creation and submission of ad text is the price-determining activity, what they're pointing to as the performance of the buyer, the quality score, is not a measure of the buyer's, here the advertiser's, level of success in creating and submitting an ad. That's not what it measures at all. What it measures is the likelihood that an end user is going to click on an ad at any particular time in response to a particular query. But that's what advertisers regard as a measure of their success, in effect. Which is going to get the most attention in this context being clicks? I mean, there are other factors, perhaps, that play into it, but that's certainly a major component. Your honor, well, first of all, in some instances, it's not a component at all. In fact, in some instances, the quality score can be calculated without taking into account the ad text at all. It plays no measure in the calculation of quality score. And so, if that's the case, it can't be measuring your performance in creation of the ad text if the quality score can be calculated without even considering the ad text. Because the quality score is determined by a And to the extent that the ad has text, I guess ad text is one of the factors that's considered, and therefore, it's a function in part of ad text. Your honor, yeah, we're not saying that the ad text, or what is in the ad, is not considered at all. I mean, but it's not... In all cases, is what you're saying. Yeah, or in any case, really, necessarily. I mean, I suppose they're... Well, that's what... I don't... In any case, necessarily, is the same as saying not in all cases. Okay. But yeah, I mean, it's sort of like saying that the... I hate to get into analogies here because I think we've taken a lot of issues with a lot of the analogies that's been raised, but it's sort of like saying that a basketball score is a measure of your success in passing the ball. I mean, the passing the ball is, you know, may be a factor into what your ultimate score is, but that's not what it measures. All right. Thank you, your honor. Very well. Mr. Lyon. If I can start by quickly addressing that jellybean example. Why isn't that your invention? That is not the invention. There's another aspect to the invention. There has to be some level of commitment to buy the product. That was my... I modified the example. So I said, these are... The jellybeans are offered to people who offered to buy the car. It's people who have an intention to buy the car, made an offer to buy the car, that offer has been accepted. So when they made the offer for the car, when that offer was accepted, they were making that offer despite the fact that there was an unknown price for the car. Right. Which is nowhere in the prior art. And then they guessed the jellybeans, and if they're lucky... And then some sort of competitive or entertaining activity that will have an effect on the ultimate price. And that again, there's no prior art that suggests anything near that invention. I can address... Even off the internet? Even off the internet. Yes, your honor. Okay. Yes. If I could address the waiver issue. Okay. Counsel made the argument that the claim construction was a non-dispositive order. It cannot be. Markman orders necessarily have to fall under the category of dispositive matters in the Eastern District of Texas. And I'd like to refer you specifically to the appendix at A-1502 to 1503, which delineates between those matters that are case dispositive and those that are not. Now, among those matters that are dispositive are motions for summary judgment, which would include a motion for summary judgment of non-infringement and any preliminary matter arising in the summary judgment of non-infringement. Claim construction is clearly such a preliminary matter. In fact, it's more than that. Claim construction is just one half of the determination that results in a summary judgment. Exactly, your honor. Claim construction is one half of the components. The first part of the two-part analysis. The first part being construe the claims. The second part being compare the construed claims to the achieved product. But because claim construction is a component of the analysis at summary judgment, excuse me, because claim construction is a component of the analysis of non-infringement that disposes of a case at summary judgment, claim construction is most certainly a case-dispositive matter. And as a factual matter in this case, it ultimately was case-dispositive. At claim construction, the court found that the claims require a price-determining activity that is not otherwise part of a sales transaction. And the case was disposed of because AdWords purportedly did not meet the limitation. I don't understand this. Suppose the court at the summary judgment argument said to the patentee, what do you say to the district court's claim construction? And he says in response, we're not challenging that here. Hasn't he waived it? Those are not the facts of this case, first. I know those are not the facts of this case, but I'd like to find out from you, wouldn't he then have waived any objections? He will have forfeited his objection and would face a higher standard at the appellate level, would face a planned error standard, if the claim construction had been provided, had included in it a written forfeiture notice. There's a requirement that there actually be accompanying the report and recommendation written notice that notifies the parties of the potential for forfeiture. Absent this notice, there's no obligation on either party to object. The parties are free to appeal directly to the appellate level and to this court. Very well. Thank you, Mr. Lyon. We thank both counsel. The case is submitted.